UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:  Cognate Cases:                                              HON. ROBERT J. JONKER

| Case Name | Case No. |
|---|---|
| John P. Hunter and Brian Hudson<br>v.<br>Mary Jane Elliott, PC<br>Portfolio Recovery Associates, LLC;<br>LVNX Funding, LLC | 1:13-CV-1338 |
| Kathryn Campbell<br>v.<br>Berndt & Associates, PC<br>Karol A. Berndt<br>Robert E. Zielinkski<br>LVNV Funding, LLC | 1:14-CV-34 |
| Mary Yarbrough<br>v.<br>Gray & Gray, PC, et al | 1:14-CV-234 |

**<u>ORDER</u>**

These are three of sixteen cognate cases arising under the federal Fair Debt Collection Practices Act.  Defendants named include purchasers of consumer debt and their collection attorneys, as well as some allegedly related parties.  Each case is a putative class action based on the core theory that Defendants routinely issued garnishments that misrepresented the nature and amount of judgment debts actually owed by including in the amount sought the costs of prior unsuccessful garnishments, contrary to MCR 3.101(R).  The Court will address the defense motions on arbitration in this Order.

The Court conducted a combined Rule 16 conference in all sixteen cases to set deadlines for case milestones. One deadline set was May 30, 2014 for any motion addressing forum challenges, including any motion seeking arbitration. At the time of the Rule 16, defendants in two cases (1:13-CV-1336, docket # 20; 1:14-CV-234, docket # 13) had already filed motions to compel arbitration. Several other defendants noted at the Rule 16 conference that they were considering such a motion. The Court set a deadline of three weeks following the Rule 16 to ensure timely briefing and decision on something as fundamental as whether the case proceeds in this Court, or in arbitration.

After the Rule 16, defendants in Case No. 1:13-CV-1336 withdrew their arbitration motion (docket # 46). Defendants in Case No. 1:14-CV-234 maintained their motion, and recently supplemented it (docket # 36). Defendants in two other cases (Case Nos. 1:13-CV-1338, docket # 37; 1:14-CV-34, docket # 42) filed timely motions to compel arbitration, or to obtain additional time to file such a motion. Defendants in Case No. 1:13-CV-1338 have just supplemented their request (docket # 54). After reviewing the complete record, the Court is not satisfied under 9 U.S.C. §§ 3–4 that any defendant has presented a written arbitration provision that covers the FDCPA claim at issue between the parties in this case. Nor is the Court persuaded that good cause exists to extend the Case Management Order deadline for arbitration motions. Accordingly, the defense motions are **DENIED**.

Neither the parties nor the Court have any quarrel with the general rules and standards applicable to motions to compel arbitration under the Federal Arbitration Act. Plaintiffs can be compelled to arbitrate if they entered a written agreement so providing. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619 (6th Cir. 2003). Close calls normally favor arbitration because of the strong federal policy in favor of arbitration. But a party seeking arbitration must still satisfy the Court that

plaintiffs did agree in writing to arbitrate the claims at issue in the case. *Bratt Enterprises, Inc. v. Noble Int'l Ltd.*, 338 F.3d 609 (6th Cir. 2003). The Court is not so satisfied on this record.

First the fundamental requirement of a written arbitration agreement is missing. In Case No. 1:14-CV-34, the defense admits the lack of a written agreement and seeks more time to locate one. In Case No. 1:13-CV-1338, the defense also admits the lack of any authenticated written agreement, and also seeks more time to find one. The defense does offer an exemplar cardmember agreement from a card issuer that issued a credit card to one of the Plaintiffs in the case, but the defense does not suggest it has yet authenticated the exemplar agreement as in effect and applicable to Plaintiff.

In the third case, Case No 1:14-CV-234, the defense did not include an authenticated, written arbitration agreement in the original motion papers, though, made an effort to do so. At most, the defense's original moving papers provided an exemplar cardmember agreement generated from "Source Code" (Page ID # 77) for a time period after Plaintiff first acquired her card. The submission included no authentication from Chase, and nothing that otherwise demonstrated the generated exemplar was actually in effect at the critical time for the account of the actual Plaintiff in the case. The defense attempts in its renewed motion and supplemental materials to fill the gap, but it is unsuccessful in the Court's view. The new material still fails to establish the particular terms of any cardmember agreement in effect at any particular time for the account of the Plaintiff in the case. It is true that the supplement includes authenticated exemplars of cardmember agreements kept in the ordinary course of Chase's business, according to a Chase Document Review Specialist. But the declaration of the Specialist does not affirmatively recite that the exemplars applied to Plaintiff's account at any particular time, or that notice of term changes were actually sent to Plaintiff, and that Plaintiff used her card after receiving the changes. Apart from the unsworn

3

cover letter, the documents all appear to be exemplars and form letters that may or may not cover Plaintiff. There is no mention of Plaintiff by name (apart from the unsworn cover letter). Moreover, the defense admits it does not have Plaintiff's original application for the card, or the cardmember agreement—or even an exemplar of the cardmember agreement—in effect at the time Chase originally issued the card to Plaintiff. So even with the supplemental material, the defense still has not produced even an exemplar of the terms originally comprising the cardmember agreement.

Upon review of the supplemental documents, it is not especially surprising that they fail to fill the gap. It was not the debt buyers who originated the relationship with the cardmember. And when the debt buyer purchased the charged off accounts from Chase, cardmember terms, arbitration agreements and even the prospect of active litigation were not important to the debt buyers. At least that is the story the relevant Purchase Agreements tell. The debt buyers expressly warrant to Chase that their "primary purpose . . . is not to commence an action or proceeding against chardholders." (Page ID 477). In fact, the only information the debt buyers really cared about were the dollars and cents of each account: specifically, how much did the cardmember owe at charge off? This and related collection information is all Chase was obligated to provide. (Page ID 478, 494). If the debt buyer ever wanted additional documentation—including the original cardmember agreement—it would have to ask Chase and possibly pay extra to obtain it. Moreover, Chase would only have to provide such a document if it was "reasonably available," and then only for 3 years post closing, a date that has passed. (Page ID # 481). Chase made no representation or warranty about the cardmember terms, and the debt buyer accepted the accounts "as is" and without any warranty about any such contractual terms (Page ID 479). Since the debt buyer did not care about possible arbitration provisions or other cardmember terms at the time they acquired the "Accounts"—a

4

defined term that makes no reference to underlying cardmember terms (Page ID 475)—it's not surprising the debt buyers are having trouble finding and authenticating such items now.

In short, the Court is not satisfied on this record that any of the moving Defendants have produced an operative, authenticated and written arbitration agreement in effect for Plaintiffs. Without such a document, the Court cannot compel arbitration.

But even if the Court assumes, for purposes of argument, that arbitration clauses like those included in exemplar copies were actually in effect for Plaintiffs, the Court is still not satisfied that the FDCPA claim at issue here is covered by such an arbitration clause. Yes, the language in the exemplars is broad, and yes, it does cover non-signatory third-parties such as Defendants. But it is still limited in one critical respect: namely, it covers only the claims "arising from or relating to [the cardmember agreement], or the relationships which result from [the cardmember agreement]." But Plaintiffs' claim in these cases is no longer about the original cardmember agreement in any respect; rather, the claim is that Defendants reduced any claims they acquired under the cardmember agreement to a state court judgment, and that Defendants then violated the FDCPA in pursuit of collection efforts on the judgment, not the original account itself. The entry of a judgment is significant because it merges into itself under Michigan law all the claims, defenses and counterclaims that the parties had arising out of the original cardmember agreements. *See Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2012) (res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties . . . could have raised but did not"). Once judgment enters, the terms of any cardmember agreement are beside the point; what controls the rights and duties of the parties post-judgment are the law and rules applicable to the judgment itself. The Court raised this issue (albeit in a different context) during

the Rule 16 conference, and no defense counsel at the time challenged the articulation of this basic theory by Plaintiffs' counsel.[1]

In light of these conclusions, the Court finds no good cause for extending the Case Management Order deadline for motions seeking to compel arbitration. In the first place, the parties now seeking to compel arbitration have had plenty of time to obtain the necessary written documents if they were truly interested in arbitration. Defendants acquired the accounts themselves several years ago. Furthermore, every one of the moving Defendants originally chose to sue the present Plaintiffs in a court of law. They took each case to judgment and did not seek arbitration. In fact, it appears they took the cases to judgment without even obtaining a copy of the controlling cardmember agreement. There is nothing inherently wrong with that, but it does not put such parties in a position to claim with credibility that they need more time now to see if they can find an arbitration agreement. Second, the Defendants seeking more time are unlikely to find an arbitration clause broader than the language at issue in Case No. 1:14-CV-234. And the Court has already concluded that such language is insufficient to compel arbitration on the unique claim at issue here, which challenges exclusively post-judgment collection activity. There is no reason to provide additional time under these circumstances.

Accordingly, the defense motions (1) Case No. 1:13-CV-1338, docket # 37; (2) Case No. 1:14-CV-34, docket # 42; and (3) Case No. 1:14-CV-234, docket # 13 and # 36, all of which touch on arbitration issues are **DENIED**.

Dated:     June 30, 2014            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE

---

[1] One defense counsel noted that the terms of a particular judgment might expressly incorporate in some way original contractual terms of the parties, but no moving Defendant has made that claim with respect to the judgments at issue in these three cases.